**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Virgil J. Humphries,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,[1]<br><br>    Defendant. | No. CV-12-01811-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the appeal of Plaintiff Virgil Humphries, which challenges the Social Security Administration's decision to deny benefits. (Doc. 10.) For the reasons set forth below, the Court affirms the Social Security Administration's decision.

**BACKGROUND**

On November 9, 2009, Humphries applied for disability insurance benefits, alleging a disability onset date of November 5, 2009. (R. at 152.) Humphries' date last insured ("DLI") for disability insurance benefits, and thus the date on or before which he must have been disabled, was December 31, 2014. (*Id.* at 14.) Humphries' claim was denied. (*Id.* at 83.) Humphries then appealed to an Administrative Law Judge ("ALJ"). (*Id.* at 104.) The ALJ conducted a hearing on the matter on April 21, 2008. (*Id.* at 28–

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this suit.

53.)

In evaluating whether Humphries was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[2] (*Id.* at 16–21.) At step one, the ALJ determined that Humphries had not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 16.) At step two, the ALJ determined that Humphries suffered from severe impairments including vertigo with dizziness, headaches, left shoulder impingement syndrome, and low back pain with spondylosis. (*Id.*) At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (*Id.* at 17.)

At that point, the ALJ made a determination of Humphries's residual functional capacity ("RFC"),[3] concluding that Humphries could perform light work with

---

[2] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if [he] proves: (1) that [he] is not presently engaged in a substantial gainful activity[,] (2) that [his] disability is severe, and (3) that [his] impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, [he] is not able to perform any work that [he] has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted).

[3] RFC is the most a claimant can do despite the limitations caused by his

- 2 -

restrictions. (*Id.*) The ALJ determined at step four, however, that Humphries did not retain the RFC to perform his past relevant work as a septic tank servicer. (*Id.* at 20.) The ALJ therefore reached step five, determining that Humphries could perform a significant number of other jobs in the national economy that met his RFC limitations and background. (*Id.* at 21.) Given this analysis, the ALJ concluded that Humphries was not disabled. (*Id.*)

On June 27, 2012, the Appeals Council denied Humphries' request for review (*id.* at 1–7) making the ALJ's decision final for purposes of review. *See* 20 C.F.R. § 422.210(a). Humphries filed the Complaint underlying this action on August 24, 2012, seeking this Court's review of the ALJ's denial of benefits.[4] (Doc. 1.) The matter is now fully briefed before this Court. (Docs. 10, 13, 19.)

**DISCUSSION**

**I.   STANDARD OF REVIEW**

A reviewing federal court will address only the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

---

impairments. *See* SSR 96-8p (July 2, 1996).

[4] Humphries was authorized to file this action by 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

- 3 -

Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted). The Court "may not reweigh the evidence, substitute our own judgment for the Secretary's, or give vent to feelings of compassion." *Winans v. Bowen*, 853 F.2d 643, 644–45 (9th Cir. 1987) (internal citation omitted).

## II. ANALYSIS

Humphries argues that the ALJ erred by: (1) rejecting the medical opinion of his treating physician (Doc. 13 at 11–18) and (2) rejecting Humphries' subjective testimony regarding his impairments (*id.* at 18–26).

### A. Treating Physician's Opinion Evidence

Humphries contends that the ALJ erred by rejecting the medical opinion of his treating physician, Dr. Anthony Dominic. The ALJ gave "little weight to the extreme limitations" assessed by Dr. Dominic in Medical Source Statements ("MSSs") dated January 20 and September 12, 2011. (R. at 20.) The ALJ explained that "[t]he evidence of record, including objective clinical signs and laboratory findings do not support such an extreme level of limitation, and Dr. Dominic's own treating notes do not substantiate these findings." (*Id.*)

In the first checklist-style MSS at issue dated January 20, 2011, Dr. Dominic selected boxes stating that Humphries could only sit, stand, or walk for less than two hours, lift or carry less than ten pounds, and could not perform at all many of the listed work activities. (*Id.* at 473–74.) Dr. Dominic also circled listed symptoms that would further limit Humphries' ability to work which were "pain, fatigue, dizziness, other-please identify" and rated the extent of those symptoms as severe. (*Id.* at 474.) In the

- 4 -

second MSS dated September 12, 2011, Dr. Dominic check-marked "no" as to whether Humphries could work for a full week on a regular basis. (*Id.* at 520.)  He listed "ch lss [chronic lumbar spine syndrome,] ch css [chronic cervical spine syndrome,] vertigo[,] COPD[, and] depression" as the impairments affecting Humphries' ability to function. (*Id.*) Further, he selected nearly identical boxes as in the first MSS regarding Humphries' limitations for work activities and symptoms that further limit his ability to work. (*Id*. at 520–21.)

In opposing the ALJ's findings regarding these MSSs, Humphries argues that the ALJ did not defer to Dr. Dominic's judgment as his treating physician. "The medical opinion of a claimant's treating physician is entitled to special weight." *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (internal quotation marks and citation omitted). This is because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Andrews v. Shalala*, 53 F.3d 1035, 1040–41 (9th Cir. 1995). If another doctor counters the treating physician's opinion, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (internal quotation marks and citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Orn*, 495 F.3d at 632 (citing SSR 96-2p[5] at 4, 61 Fed. Reg. at 34,491).

---

[5] Social Security Rulings (SSRs) "do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1224 (9th Cir. 2009). They "'reflect the official interpretation of the [SSA] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.'" *Id.* (alteration in original) (quoting *Avenetti v. Barnhart,* 456 F.3d 1122,

Humphries points to the fact that Dr. Dominic treated him from early 2009 through 2012 for the impairments listed in the MSSs. In the course of that treatment, Humphries notes, Dr. Dominic prescribed medications, ordered diagnostic tests, and referred Humphries to medical specialists. (*See* Doc. 10 at 13–14.) But "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ reviewed in detail the medical evidence, including Dr. Dominic's treatment notes, as to the impairments and symptoms mentioned in the MSSs and found that the evidence did not support the limitations stated by Dr. Dominic. (*See* R. at 18–20.)

The ALJ noted the following evidence in relation to Humphries' chronic spine syndrome and back pain. On July 27, 2010, a physical examination by Dr. Tankhamen Pappoe, a spine specialist, revealed normal ranges of motion of Humphries' cervical, thoracolumbar, and lumbar/lumbosacral spine, and upper and lower extremities. (*Id.* at 19.) Radiology studies of Humphries' spine showed only mild narrowing and minimal degeneration. (*Id.*) Dr. Dominic's radiology and thoracic studies in July 2011 showed the same. (*Id.*) Urgent care records noted by the ALJ from June 1, 2011, indicated the following: "[Humphries'] musculoskeletal examination was negative for back pain, joint pain, and joint swelling as well as limited joint motion. There was no tenderness in the cervical/lumbar spine and normal mobility and curvature of the spine." (*Id.*) Only Ibuprophen and Acetaminophen were prescribed for the pain of which Humphries complained. (*Id.*) Although he returned to urgent care on June 29 for a follow up, Humphries was returned to work immediately. (*Id.*)

As to Humphries' vertigo and dizziness, the ALJ considered the following evidence. Beginning in November 2009, Humphries' patient progress notes did not reveal

---

1124 (9th Cir. 2006)).

- 6 -

an etiology for his complaints of dizziness "even after extensive workup including CT scans, MRI scans[,] neurological evaluation[,] multiple blood evaluations [and] [a]n audiogram." (*Id.* at 18.) Further, prescription Gabapentin and Amitriptyline proved helpful for the dizziness. (*Id.*) Neurological findings from a December 2009 examination were unremarkable. (*Id.*) Neurology progress notes from February 25, 2010, revealed that Humphries' coordination was intact and that he exhibited only mild distal sensory deficits although there was a positive Romberg test. (*Id.*) Brain MRI studies in 2008 and 2010 period showed an eccentric pineal cyst that was benign and a cavernous angioma that was stable. (*Id.*) Another neurological examination revealed on July 27, 2010, that Humphries had a normal balance, gait, and stance. (*Id.* at 19.) Neurological findings were also within normal limits during his visit to urgent care on June 1, 2011. (*Id.*)

The ALJ's assignment of "little weight" to Dr. Dominic's MSSs was supported by the evidence considered by the ALJ. The objective clinical findings did not present the severity of symptoms noted in the MSSs.[6] In determining what weight to assign to medical opinion evidence, the ALJ always examines "the amount of relevant evidence that supports the opinion and the quality of the explanation provided [and] the consistency of the medical opinion with the record as a whole." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); (quoting 20 C.F.R. § 404.1527(c)(3)–(4)). There was sufficient evidence to support the ALJ's finding that Humphries' vertigo and chronic spine syndrome with concomitant symptoms of pain and dizziness did not warrant extreme work limitations. Humphries points to evidence suggesting otherwise. (*See* Doc. 10 at 14–18.) But it is enough that the ALJ discussed substantial evidence that supported his findings. *See Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) ("The [ALJ] and

---

[6] Humphries also argues that the ALJ did not consider evidence of his left shoulder impingement when discounting Dr. Dominic's MSSs. But Dr. Dominic did not list that impairment as a basis for the proffered limitations. (*See* R. at 473–74, 520–21.) Therefore, the ALJ was not required to address it in discounting the MSSs.

- 7 -

not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.") (internal citations omitted). Contrary to Humphries' assertion, the ALJ did not reject Dr. Dominic's treatment records and in fact discussed them when reviewing the evidence. (*See* R. at 19.) Further, the ALJ found that some work limitations were warranted and incorporated them into the RFC. (*Id.* at 17–18.) The ALJ rejected only the "extreme limitations" in Dr. Dominic's MSSs because they were inconsistent with the evidence. He did not err in doing so.

### B. Humphries' Testimony

Humphries contends that the ALJ erred in finding that his testimony was not fully credible as to the severity and extent of his limitations. The ALJ must engage in a two-step analysis in determining whether a claimant's testimony is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). The ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. If he has, and the ALJ has found no evidence of malingering, then the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. *See Bunnell v. Sullivan,* 947 F.2d 341 (9th Cir. 1991). The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not

arbitrarily discredit a claimant's testimony regarding pain. *Bunnell*, 947 F.2d at 345–46 (internal quotation marks and citation omitted).

Here, at the first step, the ALJ found that Humphries' medically determinable impairments could reasonably be expected to cause only some of the alleged symptoms. (R. at 19.) At the second step, the ALJ found that Humphries' "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" of having the ability to perform light work with restrictions. (*Id.* at 23–24.)

During his hearing before the ALJ, Humphries testified that he had debilitating dizziness resulting from vertigo as well as back pain. (R. at 38–40, 42–44, 47.) When experiencing dizziness, Humphries stated that he has to sit or lay down and the dizziness persists anywhere from twenty minutes to the entire day. The back pain he feels extends from his upper back to feet and occurs every day. Because of the dizziness and back pain, Humphries testified that he can stand only for ten to fifteen minutes and cannot walk for long periods of time. He can only lift five to ten pounds of weight both because of these symptoms and left shoulder pain.

The ALJ found that Humphries testimony was not entirely credible. (*Id.* at 20.) In making this finding of limited credibility, he cited to the neurological findings discussed above which were within normal limits and revealed normal balance, gait, and stance, and no lower extremity weakness. The ALJ further noted that although Humphries was diagnosed with a herniated disc, lumbar spondylosis, and lumbar radiculopathy, physical examinations showed normal ranges of motion of Humphries' cervical, thoracolumbar, and lumbar/lumbrosacral spine, and his upper and lower extremities. The ALJ also found it significant that Humphries had taken prescription Gabapentin and Amitriptyline since November 2009 which helped alleviate his symptoms. He underscored the fact that Humphries was prescribed only Ibuprophen and Acetaminophen for his left shoulder

pain. Finally, the ALJ noted that Humphries was able to return to work with some limitations after a visit to urgent care in June 2011.

The ALJ did not arbitrarily discredit Humphries' testimony. He considered the testimony along with the rest of the evidence in determining Humphries' RFC. The ALJ provided specific, clear and convincing reasons why the testimony was not entirely credible due to its inconsistency with the objective medical evidence. *See Bunnell*, 947 F.2d at 345–46. Humphries again asks the Court to make a credibility determination as to his testimony by pointing to evidence that he had consistently complained about his impairments and symptoms and that his treating physicians and specialists did not "question the veracity" of those complaints. (Doc. 10 at 19–22.) But that determination is for the ALJ to make as long as it is supported by specific reasons and the evidence, as it was here. Therefore, the ALJ did not err in weighing Humphries' testimony.[7]

### III. CONCLUSION

The ALJ made no error of law and there is substantial evidence to support the ALJ's denial of benefits.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of Court is directed to terminate this case and enter judgment accordingly.

**Dated this 24th day of September, 2013.**

/s/ A. Murray Snow
───────────────────────────
/G. Murray Snow
United States District Judge

---

[7] In a footnote, Humphries also argues that it was error for the ALJ not to consider lay witness opinion from his wife, Kathleen Humphries, "which corroborated [his] claims of disabling limitations and symptoms." (Doc. 10 at 18) But Humphries does not argue and it is not clear that the opinion adds anything more to the record than what the medical evidence or Humphries' testimony already show. (*See* R. at 18); *Molina,* 674 F.3d at 1117–22 (failure to discuss testimony of family members while rejecting claimant's own testimony was harmless when testimony "did not describe any limitations beyond those [the claimant himself] described"). Thus, the ALJ's failure to discuss Kathleen Humphries' opinion was harmless.